UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.:

SAMANTHA SCHREIBER,

    Plaintiff,

vs.                                                            **INJUNCTIVE RELIEF SOUGHT**

BENDERSON DEVELOPMENT
COMPANY, LLC

    Defendant.
_____/

## COMPLAINT

Plaintiff, SAMANTHA SCHREIBER, by and through the undersigned counsel, hereby sues the Defendant, BENDERSON DEVELOPMENT COMPANY, LLC, for injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq. (hereinafter, the "ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 (hereinafter, the "ADAAG"), and alleges as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. § 12181, et seq., based upon Defendant's several violations of Title III of the ADA (see also, 28 U.S.C. §§ 2201 and 2202).

## PARTIES

2. Plaintiff is a resident of the State of Florida, Palmetto Bay, Miami-Dade County, Florida, is sui juris, and is disabled as defined by the ADA and substantially limited in performing one or more major life activities, including but not limited to walking, standing, grabbing, grasping and pinching. Plaintiff uses and is confined to a wheelchair for mobility purposes. Plaintiff's access to the Facility and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations offered therein was restricted and/or limited because of these disabilities, and will be restricted and/or limited in the future unless and until Defendant is compelled to remedy the ADA violations which exist at the Facility, including those set forth in this Complaint.

3. Completely independent of her personal desire to have access to public places free of illegal ADA violations preventing access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering, and engaging discrimination against the disabled in these public places. When acting as a "tester," Plaintiff employs a routine practice. She personally visits the public places; she engages all of the barriers to access, or at least all of those that she is able to access; and she tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; she proceeds with legal action to enjoin such discrimination; and she subsequently returns to the premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do. Independent of subsequent visits for personal reasons, Plaintiff intends to visit the premises annually

to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the premises.

4. In this instance, Plaintiff, in her individual capacity and as a "tester," visited the Facility, encountered barriers to access at the Facility, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and Defendant's ADA violations set forth herein.

5. Plaintiff has suffered and continues to suffer direct and indirect injury as a result of Defendant's actions or inaction described herein.

6. Defendant transacts business in the State of Florida and within this judicial district. Defendant is the owner, lessee, lessor and/or operator of the real property and improvements which are the subject of this action, commonly referred to as PALM RIVER SQUARE, LOCATED AT OR ABOUT 7801 SOUTH PALM RIVER DRIVE, TAMPA, FLORIDA, (hereinafter, the "Facility").

## FACTUAL ALLEGATIONS AND CLAIM

7. On July 26, 1990, Congress enacted the Americans with Disabilities Act (hereinafter, the "ADA"), 42 U.S.C. § 12101, et seq.

8. Congress found, among other things, that:

> (i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;
>
> (ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

3

     (iii)    discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

     (iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and,

     (v)    the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

    9.  Congress explicitly stated that the purpose of the ADA was to:

     (i)    provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

     (ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

     (iii)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

    10.  The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement the requirements imposed

by the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if defendant has 10 or fewer employees and gross receipts of $500,000 or less. 42 U.S.C. § 12181; 28 C.F.R. §36.508(a).

11. The Facility is a public accommodation and service establishment.

12. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA. 29 C.F.R. Part 36. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, et seq., and 28 C.F.R. § 36.508(a).

13. The Facility must be, but is not, in compliance with the ADA and ADAAG.

14. Plaintiff has attempted to and has, to the extent possible, accessed the Facility, but could not do so because of her disability due to the physical barriers to access, dangerous conditions and ADA violations that exist at the Facility that preclude and/or limit her access to the Facility and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

15. Plaintiff intends to visit the Facility again in the near future in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at this facility, but will be unable to do so because of her disability due to the physical barriers to access, dangerous conditions and ADA violations that exist at the property that preclude and/or limit her access to the Facility and/or the goods,

services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

16. Defendant has discriminated against Plaintiff and others with disabilities, by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Facility, as prohibited by 42 U.S.C. § 12182, et seq., and will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant is compelled to remove all physical barriers that exist at the Facility, including those specifically set forth herein, and make the Facility accessible to and usable by persons with disabilities, including Plaintiff.

17. Defendant has discriminated against Plaintiff by failing to comply with the above requirements. A specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which preclude and/or limit Plaintiff's ability (because of Plaintiff's disability) to access the Facility and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Facility, include:

### **Parking**

1) There are no accessible parking spaces at the facility, in violation of numerous sections of the ADAAG, including 4.1.2 and 4.6, among others.

2) There are non-compliant curb ramps that service the disabled parking spaces, in violation of 4.7 and 4.8 of the ADAAG.

3) There are disabled parking spaces at the facility that are not striped in a compliant manner in violation of 4.6.3 of the ADAAG.

4) The parking spaces lack clear and level access aisles in violation of 4.6 of the ADAAG. Likewise, there are level changes from the sidewalk to the existing entrance in violation of 4.5.2 of the ADAAG.

5) There is no accessible parking located on the shortest accessible route to the building entrance in violation of 4.6.2 of the ADAAG.

**Entrance Access and Path of Travel**

6) There are non-compliant accessible routes from the public sidewalk and transportation stops to the facility in violation of 4.3.2 of the ADAAG.

7) There are non-complaint accessible routes from the disabled parking spaces to the facility in violation of 4.3.2 of the ADAAG. In some areas, cross-walks terminate at uncut curbs, among other things.

8) There is a lack of directional signage informing persons with disabilities as to the compliant accessible route from the disabled parking spaces to the accessible ramp and accessible entrance in violation of 4.1 of the ADAAG.

9) There are non-accessible crosswalks throughout the facility in violation of several sections of the ADAAG.

10) There are non-compliant detectible warning surfaces throughout the facility in violation of the ADAAG.

11) There are non-compliant access isles throughout the facility in violation of the ADAAG.

12) The cross-slopes and flared sides of various sidewalks throughout the facility are too steep in violation of several sections of the ADAAG.

**Access to Goods and Services**

13) There is non-compliant door hardware on multiple doors to permanent rooms and various tenant spaces that require tight pinching and grasping to operate in violation of 4.13.9 of the ADAAG.

14) There is seating and tables within the various tenant spaces that is in violation of several sections of the ADAAG, including 4.32 of the ADAAG.

15) There is a lack of signage and policies in place throughout the various tenant spaces and the facility to assist persons with disabilities within the facility in violation of 4.1 of the ADAAG.

16) There are counters throughout the various tenant spaces where customer service and/or transactions occur that are inaccessible in violation of various sections of the ADAAG, including 7.2 of the ADAAG.

17) There are bar counters throughout the tenant spaces that are inaccessible in violation of various sections of the ADAAG.

**Restrooms**

18) Restrooms within the facility and throughout the various tenant spaces are inaccessible and lack disabled use elements, including but not limited to, turning space, maneuvering clearance, and clear floor space for a wheelchair, in violation of several sections of the ADAAG.

19) Additionally, and more specifically, the restrooms within the facility and throughout the various tenant spaces contain the following violations:

   A) non-compliant side approach on the pull side of the restroom doors in violation of 4.13.6 of the ADAAG.

   B) non-compliant turning radius and clear floor spaces within the accessible stall in violation of 4.2.1, 4.2.18 and 4.22 of the ADAAG.

   C) The grab-bars do not comply with the requirements prescribed in 4.17.6 and 4.26 of the ADAAG.

   D) There are exposed and un-insulated pipes under sinks in violation of 4.19.4 of the ADAAG.

   E) There are non-compliant mirror height in violation of the requirements in 4.19 of the ADAAG.

   F) The door widths are less than the prescribed minimums, in violation of 4.13.5 and 4.13.6 of the ADAAG.

   G) The restroom doors do not have compliant door hardware in violation of 4.13 of the ADAAG.

   H) The restroom doors exceed the maximum allowable pull force in violation of the ADAAG.

   I) The toilet flush levers are misplaced in violation of the ADAAG.

18. The above listing is not to be considered all-inclusive of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Facility. Plaintiff requires an inspection of the Facility in order to determine all of the discriminatory acts violating the ADA.

19. Plaintiff has attempted to gain access to the Facility, but because of her disability has been denied access to, and has been denied the benefits of services, programs and activities of the Facility, and has otherwise been discriminated against and damaged by Defendant, because of the physical barriers, dangerous conditions and ADA violations set forth above, and expects to be discriminated against in the future by Defendant because of Plaintiff's disability, unless and until Defendant is compelled to remove the unlawful barriers and conditions and comply with the ADA.

20. The removal of the physical barriers, dangerous conditions and ADA violations set forth herein is readily achievable and can be accomplished and carried out without much difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181 (9); 28 C.F.R. § 36.304. Alternatively, because this facility is new construction, it is subject to the new construction standards of the ADAAG.

21. Plaintiff is without adequate remedy at law and is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Facility, including those set forth herein.

22. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay the undersigned counsel reasonable

attorney's fees, costs and expenses from Defendant pursuant to 42 U.S.C. § § 12205 and 12117.

23.  Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including an order to alter the subject Facility to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA.

WHEREFORE, Plaintiff respectfully requests the Court issue a permanent injunction enjoining Defendant from continuing its discriminatory practices, ordering Defendant to remove the physical barriers to access and alter the subject Facility to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, and awarding Plaintiff her reasonable attorney's fees, litigation expenses and costs.

Dated this 25th day of April, 2011.

Respectfully submitted,

/s/Lawrence Popritkin
Lawrence Popritkin, Esq.
Florida Bar No.: 0119946
LAWRENCE POPRITKIN, P.A
1801 NW 66 Avenue, Suite 104
Plantation, Florida  33313
Telephone:  (954) 791-7240
Facsimile:  (954) 791-7331
E-mail:  lpopritkin@ldplaw.net
Counsel for Plaintiff